**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cody Merrill, | No. CV-25-02386-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Cody Merrill's ("Plaintiff") appeal from the Commissioner of the Social Security Administration's ("Defendant") denial of Social Security benefits. (Doc. 13-1). The appeal is fully briefed, (Docs. 14, 18, 19), and the Court now rules.

## I.    BACKGROUND

On appeal, this Court considers whether the ALJ erred by: (1) failing to include all limitations supported by the evidence in the "residual functional capacity" ("RFC"), and (2) rejecting Plaintiff's subjective symptom testimony.

### A.  Factual Overview

Plaintiff Cody Merrill was born in 1982 and was thirty-nine years old on his alleged disability onset date of October 1, 2022. (Doc. 13-1 at 27). He has a high school education and some college. (Doc. 13-1 at 27). His past relevant work includes employment as a store laborer, cashier checker, retail cashier stocker, and fast-food worker—positions ranging from light to heavy exertion. (Doc. 13-1 at 26). At the time of the hearing, Plaintiff was

working part-time as a cashier at Dollar Tree, approximately ten to fifteen hours per week at minimum wage. (Doc. 13-1 at 39–40).

Plaintiff filed an application for Disability Insurance Benefits on January 18, 2023, alleging disability beginning October 1, 2022, based on cerebral palsy and epilepsy. (Doc. 13-1 at 20). The claim was denied initially on July 26, 2023, and upon reconsideration on October 23, 2023. (Doc. 13-1 at 20). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 11, 2024. (Doc. 13-1 at 20). The ALJ issued an unfavorable decision on October 31, 2024, finding Plaintiff was not disabled. (Doc. 13-1 at 28). The Appeals Council denied Plaintiff's request for review on June 13, 2025, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. (Doc. 14 at 2–3). Plaintiff then filed this appeal. (Doc. 14).

### B. The SSA's Five-Step Evaluation Process

To qualify for social security disability insurance benefits, a claimant must show that he "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment. *Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do his previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities"; and (2) "gainful," i.e., usually done "for pay or profit." 20 C.F.R. § 416.972(a)–(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically

determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At Step Three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's RFC before proceeding to Step Four. *Id.* §§ 404.1520(a)(4)(iii), (e). The claimant's RFC refers to his ability to perform physical and mental work activities "despite [his] limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine a claimant's RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)–(2).

At Step Four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "[his] past relevant work." *Id.* §§ 404.1520(a)(4)(iv), (e). "Past relevant work" is work the claimant has "done within the past five years that was substantial gainful activity." *Id.* § 404.1560(b)(1)(i). If the claimant has the RFC to perform his past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the ALJ will proceed to Step Five.

Finally, at Step Five, the ALJ considers whether the claimant "can make an adjustment to other work," considering his RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

### C. The ALJ's Application of the Factors

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 1, 2022, the alleged onset date. (Doc. 13-1 at 22). The ALJ noted

that while Plaintiff worked after the alleged onset date, his earnings as a part-time cashier did not rise to the level of substantial gainful activity. (Doc. 13-1 at 22).

At step two, the ALJ found that Plaintiff has the following severe impairments: cerebral palsy and epilepsy. (Doc. 13-1 at 22). The ALJ found that Plaintiff's anxiety was a non-severe impairment, resulting in no more than mild limitations in any of the four broad areas of mental functioning. (Doc. 13-1 at 22–23).

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (Doc. 13-1 at 23–24). The ALJ considered the 11.00 series of listings, including Listings 11.02 and 11.07. (Doc. 13-1 at 24).

As to the RFC, the ALJ found that Plaintiff can lift and/or carry ten pounds occasionally and less than ten pounds frequently; stand and/or walk a total of two hours in an eight-hour workday; sit for a total of six hours in an eight-hour workday; push and/or pull without limitation other than as shown for lift and/or carry; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and frequently reach in all directions, handle, finger, and feel with the right nondominant upper extremity. (Doc. 13-1 at 24). Plaintiff must avoid concentrated exposure to vibration and cannot work around hazards such as dangerous moving machinery and unprotected heights. (Doc. 13-1 at 24). Plaintiff has no restrictions in driving. (Doc. 13-1 at 24).

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Doc. 13-1 at 26).

At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, Plaintiff has acquired transferable work skills and there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including telephone solicitor (36,000 jobs), escort vehicle driver (37,468 jobs), and document preparer (13,988 jobs). (Doc. 13-1 at 27–28). Accordingly, the ALJ found that Plaintiff has not been under a disability from October 1, 2022, through the date of the decision. (Doc. 13-1 at 28).

## II.      LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Desrosiers v. Sec'y of Health and Human Servs*., 846 F.2d 573, 576 (9th Cir. 1988)). The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and evidence that detracts from the [ALJ's] conclusion." *Id*. (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2007)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion."). Further, this Court may only review the reasons the ALJ provides in the disability determination, and "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III.     DISCUSSION

Plaintiff raises two claims of error: (1) the ALJ's RFC finding failed to account for all limitations supported by the evidence regarding Plaintiff's right upper extremity, and (2) the ALJ failed to articulate clear and convincing reasons to discount Plaintiff's subjective symptom testimony. (Doc. 14 at 2). Neither claim warrants reversal.

### a.  The RFC's Right Upper Extremity Limitations

Plaintiff argues the ALJ erred by finding that Plaintiff can frequently reach, handle,

finger, and feel with his right nondominant upper extremity, because "all available evidence shows that . . . he cannot use his right arm as any more than a helper limb." (Doc. 14 at 5–6). Defendant responds that Plaintiff has failed to point to evidence that additional limitations were warranted beyond what the ALJ assessed. (Doc. 18 at 4).

### i.  Legal Standard

The RFC is an assessment of the most a claimant can do in spite of his limitations. 20 C.F.R. § 404.1545(a). The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC. *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). The ALJ must consider all the limitations imposed by the claimant's impairments, even those that are not severe. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). At all times, the burden is on the claimant to establish entitlement to disability insurance benefits. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). Furthermore, the ALJ is "free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Kitchen v. Kijakazi*, 82 F.4th 732, 742 (9th Cir. 2023).

For claims filed on or after March 27, 2017, the ALJ evaluates medical opinions according to several enumerated factors, of which supportability and consistency are the most important. 20 C.F.R. § 404.1520c(b)(2). The ALJ does not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a). An ALJ's decision to discredit any medical opinion must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).

### ii.  Analysis

The ALJ's RFC assessment regarding Plaintiff's right upper extremity is supported by substantial evidence. Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Plaintiff's central argument is that the ALJ relied on no objective medical evidence

in assessing frequent right-hand manipulation. (Doc. 14 at 6). But the ALJ found the October 2023 state agency medical findings at the reconsideration level "generally persuasive," and those findings assessed frequent reaching, handling, fingering, and feeling with the right upper extremity. (Doc. 13-1 at 26). The reconsideration consultant reviewed the longitudinal record—including the documented atrophy, smaller right arm, and wrist flexion—and nevertheless concluded that Plaintiff retained the capacity for frequent manipulation. (Doc. 13-1 at 26). The ALJ found these findings "generally consistent with and supported by the treatment record and activities of daily living." (Doc. 13-1 at 26).

Plaintiff acknowledges the ALJ relied on these findings but contends they "do[] not cite to objective evidence and appear[] to arbitrarily assign" a frequent limitation. (Doc. 14 at 7). But state agency medical consultants' opinions constitute substantial evidence when consistent with independent clinical findings or other evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). And Plaintiff does not meaningfully challenge the ALJ's persuasiveness determination under the supportability and consistency factors. *See* 20 C.F.R. § 404.1520c(b)(2).

The ALJ also reasonably considered Plaintiff's work history and current work activity. Plaintiff's cerebral palsy is a lifelong, static condition that existed during periods when Plaintiff performed full-time work at light and medium exertional levels. (Doc. 13-1 at 25). Longstanding impairments existing during periods when a claimant was employed may undermine claims of disability. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). Additionally, even where work does not constitute substantial gainful activity, it may show that a claimant is able to do more than he actually did. 20 C.F.R. § 404.1571. Here, the ALJ noted that Plaintiff was working part-time as a cashier—a job requiring him to be on his feet—and had offered to work full-time but the opportunity had not arisen. (Doc. 13-1 at 25). Notably, all of Plaintiff's past and current work was performed at exertional levels at or above the sedentary RFC the ALJ assessed. (Doc. 13-1 at 24). This supports the ALJ's determination that Plaintiff can perform sedentary work with frequent right-hand manipulation.

Furthermore, Plaintiff identifies no medical opinion in the record supporting a greater restriction than frequent. No treating physician, examining physician, or other medical source opined that Plaintiff's right upper extremity was limited to occasional use or less. The 2013 consultative examiner noted "limitations" in working with the right upper extremity but did not specify a degree, and that opinion predated the alleged onset date by nine years. (Doc. 13-1 at 26). The ALJ found that opinion only partially persuasive for these reasons. (Doc. 13-1 at 26). Plaintiff bears the burden of establishing disability, and has not pointed to a medical source opinion supporting the manipulative restrictions he now advocates. *Tidwell*, 161 F.3d at 601.

Finally, the objective evidence Plaintiff cites—visible atrophy, wrist contracture, spastic dystonia, and inability to rotate the wrist (Doc. 14 at 6)—does not compel a finding of greater limitations than the ALJ assessed. These conditions are documented throughout the record, and both the ALJ and the state agency consultant were aware of them in formulating the RFC. (Doc. 13-1 at 26). The RFC does not assume full use of the right hand; it accounts for Plaintiff's limitations by restricting him to sedentary work with frequent, rather than constant, right-hand manipulation. (Doc. 13-1 at 24). Moreover, even the evidence Plaintiff cites reflects some residual function. At the 2013 consultative examination, Plaintiff demonstrated the ability to press his right hand against objects held with his left hand and could lift a quart of milk with his right arm. (Doc. 18 at 7). The ALJ's assessment represents a rational interpretation of the evidence.

### b. Plaintiff's Subjective Symptom Testimony

Plaintiff argues the ALJ failed to articulate clear and convincing reasons to discount his testimony regarding the severity of his right upper extremity limitations and his seizure symptoms. (Doc. 14 at 8-10). Defendant responds that the ALJ's evaluation was supported by substantial evidence. (Doc. 18 at 4-8).

### i. Legal Standard

In assessing the credibility of a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir.1991)). If there is such objective evidence, and "no evidence of malingering," "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). "The standard isn't whether [the reviewing] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the *power* to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (emphasis added).

When assessing witness credibility, an ALJ may consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1282).

### ii. Analysis

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that his statements concerning their intensity, persistence, and limiting effects were not entirely consistent with the record. (Doc. 13-1 at 24). The ALJ provided specific, clear, and convincing reasons for this determination.

As to Plaintiff's right upper extremity testimony, the ALJ's reasoning rests on the same work history, current employment, and daily activities discussed in Section A—all of which the Court has found constitute substantial evidence supporting the RFC. Plaintiff's remaining argument on this point concerns daily activities specifically.

Plaintiff contends the ALJ erred in relying on daily activities because every activity the ALJ cited can be performed one-handed. (Doc. 14 at 10; Doc. 19 at 4). But the ALJ

was not required to find that Plaintiff performs these activities with his right hand in order to rely on them. Daily activities may be grounds for discrediting a claimant's testimony to the extent they contradict claims of a totally debilitating impairment, even where those activities suggest some difficulty functioning. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). The ALJ found that the scope of Plaintiff's activities—part-time work, household chores, self-care, driving, pet care, managing finances, attending family gatherings, and shopping (Doc. 13-1 at 25)—considered alongside his work history and the medical evidence, did not support the degree of limitation alleged. Daily activities are a permissible consideration under 20 C.F.R. § 404.1529(c)(3)(i), and the ALJ's reliance on them here was reasonable.

Plaintiff cites *Ferguson v. O'Malley*, 95 F.4th 1194 (9th Cir. 2024), for the proposition that the ALJ must expressly state what medical evidence is inconsistent with the claimant's symptom testimony. (Doc. 14 at 9). But *Ferguson* is distinguishable. There, the ALJ "never expressly and specifically stated that [the claimant's] headache symptom testimony was inconsistent with any particular record evidence." *Id.* at 1200. Here, the ALJ identified the specific basis for his finding: Plaintiff's statements about his right-hand limitations were inconsistent with his history of performing full-time work at light and medium exertion levels with the same condition, his current part-time cashier employment, his daily activities, and the generally persuasive state agency findings assessing frequent manipulation. (Doc. 13-1 at 24–26). The ALJ's path from the evidence to his conclusion can be reasonably discerned.

As to Plaintiff's seizure testimony, the ALJ identified specific inconsistencies that independently constitute clear and convincing reasons to discount the alleged severity. Plaintiff claimed two to three seizures per week in his seizure questionnaire but listed only six seizures over twelve months in the same document. (Doc. 13-1 at 25). He did not provide the names of anyone who had witnessed his seizures. (Doc. 13-1 at 25). His seizures were described as non-epileptic on multiple occasions in the treatment record. (Doc. 13-1 at 25). Plaintiff reported the ability to abort many episodes by sitting down or

closing his eyes, and reported short-duration episodes of two to five minutes. (Doc. 13-1 at 25). The treatment record lacks specific information regarding recovery times. (Doc. 13-1 at 25). And Plaintiff's doctor had not restricted his right to drive. (Doc. 13-1 at 25). These are precisely the types of specific, identifiable inconsistencies that satisfy the clear and convincing standard. *See Smartt*, 53 F.4th at 499. Plaintiff does not substantively challenge the ALJ's seizure analysis in his briefs, focusing instead on the right upper extremity issue.

The ALJ's decision, read as a whole, provides a clear path from the evidence to the conclusions reached. *See Kaufmann*, 32 F.4th at 851.

Because the Court affirms the ALJ's decision, Plaintiff's request for remand is denied.

**IV.    CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that the ALJ's decision is AFFIRMED.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated this 18th day of March, 2026.

_____
James A. Teilborg
Senior United States District Judge